

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT IUFFUES WEBB II, | ) |
| Plaintiff, | ) |
| v. | ) No. 03 C 4436 |
| CITY OF JOLIET, WARREN C. DORRIS, JR., DAVID L. GERDES, NICHOLAS R. AMELIO, BEN BILLUPS, ROBERT DESIDERIO, JOSEPH EGIZIO, RONALD NAGRA, KEVIN SEPULVEDO, COUNTY OF WILL, THOMAS KONZAL and DANIEL RIPPY, | ) Judge Ronald A. Guzmán |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Robert Iuffues Webb II has sued the City of Joliet ("the City"), Joliet City Councilman Warren C. Dorris, Jr., Joliet Chief of Police David L. Gerdes, Joliet Police Officers Nicholas R. Amelio, Ben Billups, Robert Desiderio, Joseph Egizio, Ronald Nagra, Kevin Sepulvedo, Will County ("the County") and Will County Assistant State's Attorneys Thomas Konzal and Daniel Rippy ("the State's Attorneys") for their alleged violations of his rights under the United States Constitution and state law. Before the Court are: (1) the City, Gerdes, Dorris, Amelio, Egizio, Desiderio and Billups' ("the City defendants") Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the claims asserted against them in Counts I, III-VI and VIII-XVI of plaintiff's third amended complaint; (2) the County and State's Attorneys' Rule 12(b)(6) motion to dismiss the claims asserted against them in Counts II, IX and XI-XV of the third amended complaint; and (3) plaintiff's motion to strike portions of the City defendants' reply brief. For the reasons set forth below, the City defendants'

motion is granted in part and denied in part, the County and State's Attorneys' motion is granted in part and denied in part and plaintiff's motion to strike is denied.

**Facts**

In his third amended complaint, plaintiff claims that the defendants deprived him of his First, Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1981, 1983 and 1985(3) and that they are liable under state law for false arrest, false imprisonment, malicious prosecution, abuse of process, intentional infliction of emotional distress, defamation and negligence. All of plaintiff's claims are based on the following events, which allegedly took place at the times noted:

(1) On December 17, 1996, certain City officials placed another man's name ahead of plaintiff's on the list of citizens wishing to speak at the city council meeting, enabling that man to make slanderous comments about plaintiff at the meeting (Third Am. Compl. ¶¶ 19-23);

(2) On March 3, 1998, the City adopted Resolution 4511 limiting citizens' access to council meetings (*id.* ¶ 25);

(3) On April 7, 2001, defendant Amelio falsely arrested plaintiff for mob action to prevent him from exercising his First Amendment rights (*id.* ¶ 28);

(4) On August 17, 2001, defendant Gerdes dismissed as unfounded the complaint plaintiff had filed with the Police Department regarding the mob action arrest (*id.* ¶¶ 29-31);

(5) On June 27, 2001, defendants Desiderio, Egizio and Amelio unreasonably searched and falsely arrested plaintiff for criminal trespass (*id.* ¶¶ 34-46);

(6) On June 28, 2001, defendant Billups refused to initiate an internal investigation of the criminal trespass arrest (*id.* ¶ 48);

(7) In July 2001, defendants Egizio and Desiderio learned that the niece of the owner of the property on which plaintiff had allegedly trespassed had authorized plaintiff to be there, but they withheld that information from the prosecutors (*id.* ¶¶ 50, 56);

(8) On January 16, 2002, Egizio and Desiderio conspired with defendant Rippy to have plaintiff charged with criminal contempt of court and caused two sheriff's deputies to unlawfully restrain plaintiff from leaving the courthouse in retaliation for his exercise of free speech (*id.* ¶¶ 66-75);

(9) In April 2004, defendant Dorris made false statements about plaintiff to a school gathering, which were published in a newspaper (*id.* ¶ 89), and the City refused to make Dorris correct the statements (*id.* ¶¶ 90-91);

(10) On June 29, 2004 defendant Sepulvedo falsely arrested plaintiff for having liquor on the public way and used excessive force in effecting that arrest (*id.* ¶¶ 94-106); and

(11) On July 7, 2004 Gerdes dismissed plaintiff's internal complaint regarding the liquor on the public way arrest (*id.* ¶¶ 107-09).

## Discussion

### Motion to Strike

Plaintiff asks the Court to strike various statements from the City defendants' reply brief. Motions to strike are governed by Rule 12, which permits the Court to "stri[ke] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Because a brief is not a pleading and defendants' arguments do not constitute impertinent or scandalous matter, plaintiff's motion to strike is denied.

### Motions to Dismiss

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

3

Before delving into the individual counts, we have a few preliminary observations. First, some of plaintiff's federal claims are obviously time-barred. The limitations period for each federal claim is two years. *See Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992) (42 U.S.C. §§ ("sections") 1983 and 1985(3)); *Smith v. City of Chi. Heights*, 951 F.2d 834, 839 (7th Cir. 1992) (section 1981). That period begins to run "when the plaintiff knows or should know that his . . . constitutional rights have been violated." *Wilson*, 956 F.2d at 740. To the extent the alleged events of December 17, 1996, March 3, 1998 or April 7, 2001 violated plaintiff's rights, he knew or should have known it at the time. Thus, the statute of limitations on any civil rights claim based on those events started running the day each event occurred. Plaintiff did not file this suit until June 26, 2003, more than two years after each of those events occurred. Thus, any civil rights claim based on those events is time-barred and must be dismissed.[1]

Second, two of the police officers named as defendants, Kevin Sepulvedo and Ronald Nagra, have not moved to dismiss. A review of the Court's docket reveals why: neither man has been served. Because more than 120 days have passed since Sepulvedo and Nagra were named as defendants in this suit, any claims plaintiff asserts against them are dismissed without prejudice pursuant to Rule 4(m).

---

[1] Claims should not be dismissed on statute of limitations grounds unless "the complaint alleges facts that create an ironclad defense." *Foss v. Bear Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005). Such is the case here. Plaintiff alleges that he knew at the time of each of these events that his rights had been violated and that the defendants repeatedly refused to give him any redress. Those allegations scotch any equitable tolling or equitable estoppel arguments and establish that any section 1983 claim based on those events is time-barred.

## Count I

In Count I, plaintiff alleges that the City is liable for the remaining incidents under section 1983 because its failure to train and supervise its employees caused the constitutional violations. The City can be held liable under section 1983 only if it deprived plaintiff of his constitutional rights pursuant to one of its policies, customs or practices. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiff can allege a policy within the meaning of *Monell* by: 1) identifying an express policy that caused the alleged constitutional violation; 2) alleging the existence of a practice so widespread and permanent that it constitutes a custom or usage; or 3) alleging that his injuries were caused by a person with final policy-making authority. *Baxter ex rel. Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (citations omitted).

Plaintiff contends that his injuries were caused by a City custom namely, its failure to train the defendant police officers and councilman. (Third Am. Compl. ¶¶ 118-21.) The City can be held liable under section 1983 for inadequately training its employees only if it had "actual or constructive notice" that its omissions were likely to result in constitutional violations. *Cornfield ex rel. Lewis v. Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). Such notice is presumed if the municipality does not train its employees "with respect to a clear constitutional duty implicated in recurrent situations that [they are] certain to face" or there is a pattern of constitutional violations such that the City should have realized its training was deficient. *Id.*

Plaintiff alleges that the City did not adequately train defendants Egizio, Desiderio and Amelio to conduct constitutional searches and arrests.[2] (*See* Third Am. Compl. ¶¶ 118-21.) If that

---

[2] Plaintiff also alleges that the City failed to instruct Egizio and Desiderio that they must provide exculpatory evidence to prosecutors. For the reasons discussed below, however, plaintiff has no viable due process claim against the officers for suppression of evidence. Because the officers did not violate plaintiff's due process rights, plaintiff has no claim against the City for

5

is true, and we must assume that it is, then the City's training program is plainly flawed. Thus, plaintiff's allegations, though conclusory, are sufficient to state a section 1983 claim against the City for its failure to properly train the defendant officers. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.").

The situation is different for plaintiff's claim that the City failed to train defendant Dorris. That claim is premised on Dorris' alleged defamation of plaintiff. (Third Am. Compl. ¶ 89.) But defamation that injures reputation and nothing more, which is what plaintiff alleges, does not violate the Constitution. *See Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997) ("[D]efamation by a public officer is not a constitutional tort, because the interest that it invades, the interest in reputation, is not deemed liberty or property within the meaning of the due process clauses of the Constitution . . . ."). Because plaintiff does not allege that the defamation injured any constitutionally-protected interest, the City cannot be held liable under section 1983 for failing to instruct Dorris about defamation.

Plaintiff's claims that the City failed to train defendants Gerdes and Billups are equally infirm. These claims are based on those defendants' alleged failure to handle properly the complaints plaintiff filed with the Police Department. (Third Am. Compl. ¶¶ 31, 48, 109.) Plaintiff, however, has no constitutional right to have such complaints investigated. *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (holding that a police chief's failure to investigate plaintiff's complaint letter did not constitute a constitutional violation), *aff'd*, 23 F.3d 410 (7th Cir. 1994). Thus, Billups and Gerdes' alleged failure to conduct internal investigations cannot be the basis for

---

failing to train them with respect to those rights.

a section 1983 claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

## Count II

In Count II, plaintiff alleges that the County is liable under section 1983 for its failure to train defendants Konzal and Rippy. As we noted in our previous Memorandum Opinion and Order, however, state's attorneys are state, not county, officials. *Ingemunson v. Hedges*, 133 Ill. 2d 364, 369 (Ill. 1990); (*see* 5/24/04 Mem. Op. & Order at 11). Moreover, unlike counties, states are not among the government actors subject to suit under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The claims asserted in Count II, therefore, must be dismissed.

## Count III

In Count III, plaintiff asserts, *inter alia*, a section 1983 claim against defendants Desiderio, Egizio and Amelio for violating his Fourth Amendment rights when they arrested him on June 27, 2001.[3] If defendants had probable cause for the arrest, however, these claims are barred. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) (stating that "the existence of probable cause . . . is an absolute bar to a Section 1983 claim for unlawful arrest"). Defendants had probable cause to arrest plaintiff if, "the facts and circumstances within their knowledge and of which they [had] reasonably trustworthy information [were] sufficient to warrant a prudent [person] in believing that

---

[3]In this count, plaintiff also asserts section 1983 unreasonable search claims against Desiderio, Egizio and Amelio for the search they conducted on June 27, 2001 and section 1983 claims against Desiderio and Egizio for their alleged role in plaintiff's false arrest on January 26, 2002. Because defendants do not address these claims, however, neither do we.

7

[plaintiff] had committed or was committing an offense." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (citation omitted). Defendants say that plaintiff's allegations establish that they had probable cause for the June 27, 2001 criminal trespass arrest.

The Court disagrees. Plaintiff violated the Illinois criminal trespass law if, among other things not relevant here, he "knowingly and without lawful authority enter[ed] or remain[ed] within or on a building." 720 ILL. COMP. STAT. 5/21-3(a)(1). The information known to defendants, as plaintiff alleges it, is that: (1) on June 27, 2001, an agreement was in effect between Charles Cain, Sr., the purported owner of the property at 213-215 Sherman Street, and the Joliet Police Department that authorized the police to enter that property and arrest for trespassing anyone who Cain had not identified as having permission to be there (Third Am. Compl. ¶ 34; *id.*, Ex. 3, 6/13/01 Joliet Police Dep't Agency Agreement); (2) defendants watched plaintiff enter the building at 213 Sherman by using keys (*id.* ¶¶ 37-39); (3) plaintiff told defendants that he was the watchman for the property (*id.* ¶ 39); (4) defendants falsely told plaintiff that his name was on the list of people Cain forbade from entering the property (*id.* ¶¶ 41-42); and (5) defendants refused to call Cain to determine whether plaintiff was permitted to be on the property (*id.* ¶ 42). Though these allegations support the inference that a reasonable person would have believed plaintiff entered 213 Sherman, knowing that he did not have permission to do so, they do not require it. Because a reasonable person could also conclude from these allegations that plaintiff had permission to enter the property, or at least believed that he did, they do not establish that defendants had probable cause for the criminal trespass arrest. Defendants' motion to dismiss these false arrest claims is, therefore, denied.

## Count IV

In Count IV, plaintiff alleges that the City, Amelio, Desiderio and Egizio are liable under section 1983 for conspiring to retaliate, and retaliating, against him for exercising his First Amendment rights by arresting him on June 27, 2001. (*See* Third Am. Compl. ¶ 128.) Defendants contend that this claim, which was raised for the first time in the third amended complaint, is time-barred.

The Court disagrees. Though plaintiff did not allege in his first two complaints that the events of June 27, 2001 violated his First Amendment rights, (*see* Compl. ¶¶ 79-105; Second Am. Compl. ¶¶ 82-107), that omission is not fatal to his claims. A claim raised in an amended complaint relates back to the filing date of the original complaint for statute of limitations purposes if it "[arises] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. CIV. P. 15(c)(2). Plaintiff's section 1983 First and Fourth Amendment claims arise out of the same conduct, the June 27, 2001 arrest, which plaintiff alleged was motivated by his public criticism of the Police Department. (*See* Compl. ¶¶ 27, 44-61.) Because the First Amendment claims arise out of conduct that plaintiff alleged in his original complaint, filed June 26, 2003, for limitations purposes it is deemed to have been filed on the same day. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) ("Generally, an amended complaint in which the plaintiff merely adds legal conclusions or changes the theory of recovery will relate back to the filing of the original complaint if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.") (citation omitted). Defendants' motion to dismiss the First Amendment claims asserted in Count IV is denied.

## Count V

In Count V, plaintiff alleges that defendants Egizio and Desiderio are liable under section 1983 for violating his due process rights by withholding from the prosecutors evidence that plaintiff had permission to be on the Sherman Street property. Our court of appeals has recognized that the police violate a criminal defendant's due process rights if they taint his trial by withholding material exculpatory evidence from prosecutors. *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). According to the third amended complaint, however, plaintiff was never tried on the criminal trespass charge. (Third Am. Compl. ¶ 58 (alleging that the State's Attorney chose to *nolle prosequi* the criminal trespass charge on February 26, 2002).) Unless plaintiff was tried, and he affirmatively alleges that he was not, he has no basis for this kind of due process claim. *See Ineco v. City of Chi.*, 286 F.3d 994, 998 (7th Cir. 2002) (stating that "[s]ection 1983 provides a remedy for certain forms of *trial-based* government misconduct based on violations of due process") (emphasis supplied).[4]

## Count VI

In Count VI, plaintiff alleges that defendants Desiderio and Egizio are liable under section 1985(3) for conspiring to deprive him of equal protection in connection with his June 27, 2001 arrest. To state a viable section 1985(3) claim, plaintiff must allege that defendants formed a conspiracy, for the purpose of depriving him of equal protection of the laws and because of class-based animus, that they took an act in furtherance of the conspiracy and that plaintiff was injured or deprived of a

---

[4] Recently, our court of appeals has suggested that there may be an exception to this rule for guilty pleas procured through the suppression of exculpatory evidence. *See McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) ("[I]t is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea.")

10

federal right. *Trautvetter v. Quick*, 916 F.2d 1140, 1153 (7th Cir. 1990). Defendants say plaintiff has not adequately pleaded these elements because he "alleges no facts . . . to suggest that [a] conspiracy . . . existed" but "simply concludes" that one did. (Defs.' Mem. Law Supp. Mot. Dismiss at 8.)

The Federal Rules of Civil Procedure, however, do not require plaintiff to plead facts, *see Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) ("[A] plaintiff in a suit in federal court need not plead facts; he can plead conclusions."), even for conspiracy claims, *see Tierney v. Vahle*, 304 F.3d 734, 742 (7th Cir. 2002) ("[T]here are no heightened rules of pleading a federal case besides those listed in Fed. R. Civ. P. 9, and conspiracy is not on the list."). Plaintiff alleges that Egizio and Desiderio conspired to deprive him of equal protection of the laws because of racial bias, falsely arrested him in furtherance of the conspiracy and, as a result, deprived plaintiff of his Fourth Amendment rights. (*See* Third Am. Compl. ¶¶ 37-49, 132-35.) Those allegations are sufficient to state a section 1985(3) claim.

## Count VII

In Count VII, plaintiff asserts a section 1983 excessive force claim against defendant Sepulvedo. (*See* Third Am. Compl. ¶¶ 136-38.) As noted above, however, Sepulvedo has never been served. Thus, this claim must be dismissed.

## Count VIII

In Count VIII, plaintiff alleges that defendants Gerdes and Billups violated section 1981 when they treated his internal complaints differently than they treat those of white citizens. Defendants contend that these claims are time-barred because they were raised for the first time in the third

amended complaint filed in July 2004, well after the two-year limitations period for these claims had expired.

The Court disagrees. As an initial matter, the section 1981 claim based on Gerdes' allegedly improper dismissal of plaintiff's complaint about the June 29, 2004 arrest is plainly timely. The dismissal allegedly occurred on July 7, 2004, just a few weeks before plaintiff asserted the section 1981 claim based on it in his third amended complaint.

Moreover, the section 1981 claims that are based on Billups' June 28, 2001 refusal to investigate one of plaintiff's complaints and Gerdes' August 17, 2001 resolution of another complaint relate back to plaintiff's original filing. Because these claims simply change the theory of recovery for conduct set forth in the complaint filed June 26, 2003, (*see* Compl. ¶¶ 65, 89), they are deemed to have been filed that day. *Henderson*, 253 F.3d at 931. Thus, all of plaintiff's section 1981 claims are timely.

Even if they are timely, defendants say these claims must still be dismissed because they do not recite all of the required elements. To state a viable section 1981 claim, plaintiff must allege "that (1) [he is a] member[] of a racial minority; (2) the defendant[s] had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute," *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996), which are: making and enforcing contracts, filing and being a party to a lawsuit, giving evidence, and enjoying "the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). Defendants say the last element is missing.

Plaintiff's section 1981 claims are based on defendant's alleged discriminatory treatment of his complaints of police misconduct. Though defendants have not provided, and we could not find, a case on point, the statutory phrase "proceedings for the security of persons and property" seems

12

to encompass the Police Department's internal process for investigating complaints of police misconduct. Defendants' motion to dismiss Count VIII is, therefore, denied.

## Count IX

In Count IX, plaintiff alleges that Desiderio, Egizio and the State's Attorneys Konzal and Rippy are liable for violating section 1985(3) for conspiring to have plaintiff found in criminal contempt of court. The police officers say that these claims must be dismissed because plaintiff's conclusory conspiracy allegation is contradicted by his allegations that the only overt acts in furtherance of the conspiracy were taken by defendant Rippy.

The Court disagrees. Though plaintiff alleges that Rippy took most of the overt acts in furtherance of the alleged conspiracy, (*see* Third Am. Compl. ¶¶ 67-75), he also alleges that Desiderio and Egizio helped Rippy compose the allegedly fraudulent petition for criminal contempt (*see id.* ¶ 73). That allegation is a sufficient basis for the Court to infer that Desiderio and Egizio made an agreement with Rippy to violate plaintiff's rights.

The State's Attorneys argue that the Eleventh Amendment shields them from these claims. If plaintiff had sued them in their official capacities, that would be true. *See Hafer v. Melo*, 502 U.S. 21, 30 (1985) (stating that Eleventh Amendment bars federal suits against states and state officials sued in their official capacities). But plaintiff sues the State's Attorneys in their individual capacities, claims that the Eleventh Amendment does not bar. *Id.* at 31.

Moreover, contrary to defendants' belief, the fact that plaintiff is suing them for action they allegedly took in the course of their employment does not transform his personal capacity claims into official capacity claims. Rather, as the Supreme Court stated in *Hafer*:

13

> Through § 1983, Congress sought to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulates Hafer from suit.

*Id.* at 27-28 (citation omitted). In short, "the Eleventh Amendment provides no shield" for the State's Attorneys against plaintiff's claims that, in their individual capacities, they "deprived [him] of [his] federal right[s] under the color of state law." *Id.* at 30 (internal citation omitted).

That does not mean, however, that plaintiff's claims against the prosecutors are viable. Prosecutors are absolutely immune from civil rights claims based on conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "Absolute immunity covers[, among others, such] prosecutorial functions as the initiation and . . . pursuit of a criminal prosecution . . . ." *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995). Plaintiff's section 1985(3) claims against Konzal and Rippy are based solely on their initiation and pursuit of the criminal contempt charge. (*See* Third Am. Compl. ¶¶ 69-79.) As a result, Konzal and Rippy are absolutely immune from the claims plaintiff asserts against them in Count IX.

### Counts X-XIV and XVI

In Count X, plaintiff alleges that the City, Amelio, Desiderio and Egizio are liable under state law for falsely arresting him on June 27, 2001. (*Id.* ¶¶ 147-48.) In Count XI, plaintiff alleges that the City, Desiderio, Egizio, the County and the State's Attorneys are liable under state law for falsely imprisoning him in the courthouse on January 16, 2002. (*Id.* ¶¶ 150-52.) In Count XII, plaintiff

alleges that the City, Desiderio, Egizio, the County and the State's Attorneys are liable for maliciously prosecuting him for criminal contempt on January 16, 2002. (*Id.* ¶¶ 154-56.) In Count XIII, plaintiff alleges that the City, Desiderio, Egizio, the County and the State's Attorneys are liable for abuse of process in connection with his prosecution for criminal contempt on January 16, 2002. (*Id.* ¶¶ 158-60.) In Count XIV, plaintiff alleges that the City, the police officer defendants, the County and the State's Attorneys are liable for intentionally inflicting emotional distress upon him. (*Id.* ¶¶ 162-66.) In Count XVI, plaintiff alleges that all of the City defendants are liable for negligence because they breached their "legal duty [to plaintiff] to act with reasonable and due care to promote faith and confidence of the citizens in their government." (*Id.* ¶¶ 172-75.)

As to the City defendants, these claims are time-barred. Joliet is a local public entity subject to the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILL. COMP. STAT. 10/1-101, *et seq.* 745 ILL. COMP. STAT. 10/1-206 (defining "local public entity" as, among other things, a municipality). In pertinent part, the Act states that "[n]o civil action other than [one arising from patient care] may be commenced in any court against a local public entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILL. COMP. STAT. 10/8-101. Plaintiff's initial complaint was not filed until June 23, 2003, more than one year after the June 27, 2001 arrest and the events of January 16, 2002, on which the false imprisonment, malicious prosecution, intentional infliction of emotional distress, abuse of process and negligence claims are based. Thus, the claims asserted against the City defendants in Counts X-XIV and XVI are untimely and must be dismissed.

The claims against the County must also be dismissed. Plaintiff seeks to hold the County liable for the claims in these counts solely because it employs the State's Attorneys. (*See* Third Am. Compl. ¶¶ 152, 156, 160, 166, 170.) As noted above, however, the defendant State's Attorneys are

15

employees of the State of Illinois, not of Will County. *See Ingemunson*, 133 Ill. 2d at 369. Thus, there is no basis for holding the County vicariously liable for any of the torts the State's Attorneys may have committed against plaintiff.

The situation is different for the claims asserted against the State's Attorneys. Those defendants make no substantive argument for dismissal but contend the Court has no basis for exercising supplemental jurisdiction over these state-law claims because the federal claims against them have been dismissed.

The Court disagrees. In relevant part, the statute that confers supplemental jurisdiction on this Court states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case of controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Court may to decline to exercise supplemental jurisdiction if, among other reasons, it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Though the Court has dismissed all of the federal claims plaintiff asserts against the State's Attorneys, the federal claims he asserts against the City defendants remain. Because we have not dismissed all of the claims over which we have original jurisdiction, we have no basis for relinquishing supplemental jurisdiction over the claims plaintiff asserts against the State's Attorneys in Counts XI-XIV.

**Count XV**

In Count XV, plaintiff alleges that the City and Dorris are liable for defamation.[5] The claim against the City is easily dispatched. The Tort Immunity Act expressly provides that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous." 745 ILL. COMP. STAT. 10/2-107. Thus, even if Dorris did defame plaintiff, the City cannot be held liable for his actions.

The claim against Dorris, however, survives. In Illinois, there are two types of defamation: defamation *per se* and defamation *per quod*. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). Among the categories of statements deemed defamatory *per se* are those that impute "[an] inability to perform or want of integrity in the discharge of duties of public office." *Id.* Plaintiff does not allege Dorris' actual words, but it is reasonable to infer from the complaint that Dorris said plaintiff greatly prolonged Joliet City Council meetings. (*See* Third Am. Compl. ¶ 89.) The charge that plaintiff protracts meetings does not necessarily impute incompetence or lack of integrity; plaintiff may belabor the proceedings because he is a meticulous champion of his constituents' interests, not because he is a dishonest, bungler. But it could do so. Because plaintiff is entitled to all reasonable inferences, and his allegations support the inference that Dorris defamed him *per se*, the motion to dismiss Count XV is denied.

---

[5] In this count, plaintiff also asserts defamation claims against the State's Attorneys and against the County on a *respondeat superior* theory. (*See* Third Am. Compl. ¶¶ 167-68, 170.) For the reasons discussed above, however, the County has no *respondeat superior* liability for the State's Attorneys' alleged torts. Thus, Count XV as to the County must be dismissed. The claims against the State's Attorneys, who made no substantive argument for dismissing them, will stand.

17

## Conclusion

For all of the reasons stated above, plaintiff's motion to strike [doc. no. 68] is denied. The City defendants' motion to dismiss plaintiff's third amended complaint [doc. no. 58] and the County and the State's Attorneys' motion to dismiss plaintiff's third amended complaint [doc. nos. 56 and 66] are granted in part and denied in part. The motions are granted as to:

(1) the claims asserted against defendant Sepulvedo in Counts III and VII, which are dismissed without prejudice;

(2) any claims asserted against defendant Nagra, which are dismissed without prejudice;

(3) any section 1981, section 1983 or section 1985(3) claims based on the alleged events of December 17, 1996, March 3, 1998 or April 7, 2001, which are dismissed with prejudice;

(4) the section 1983 claims asserted against the City in Count I that are premised on (a) its alleged failure to train Dorris, Gerdes and Billups; and (b) its alleged failure to train Desiderio and Egizio to give exculpatory evidence to prosecutors, all of which are dismissed with prejudice;

(5) the section 1983 claims asserted against the County in Count II, which are dismissed with prejudice;

(6) the section 1983 due process claims that plaintiff asserts against Egizio and Desiderio in Count V, which are dismissed with prejudice;

(7) the section 1985(3) claim plaintiff asserts against Konzal and Rippy in Count IX, which is dismissed with prejudice;

(8) the false arrest, the false imprisonment, malicious prosecution, intentional infliction of emotional distress, abuse of process and negligence claims plaintiff asserts against the City defendants in Counts X-XIV and XVI, which are dismissed with prejudice;

(9) the defamation claim plaintiff asserts against the City in Count XV, which is dismissed with prejudice; and

(10) the false imprisonment, malicious prosecution, intentional infliction of emotional distress, abuse of process and defamation claims plaintiff asserts against the County in Counts XI–XV, which are dismissed with prejudice.

In all other respects, the motions to dismiss are denied. The only claims that remain in this suit are:

(1) the section 1983 claims asserted against the City in Count I for failing to train Egizio, Desiderio and Amelio to conduct constitutional searches and arrests;

(2) the section 1983 unreasonable search and arrest claims asserted in Count III against Desiderio, Egizio and Amelio for the June 27, 2001 search and arrest and the section 1983 false arrest claims asserted against Desiderio and Egizio in Count III for the January 16, 2002 arrest;

(3) the section 1983 conspiracy to retaliate and First Amendment retaliation claims asserted against the City, Amelio, Desiderio and Egizio in Count IV;

(4) the section 1985(3) claims asserted against Desiderio and Egizio in Count VI for their alleged conspiracy to deprive him of equal protection in connection with his June 27, 2001 arrest;

(5) the section 1981 claims asserted against Gerdes and Billups in Count VIII;

(6) the false imprisonment, malicious prosecution, abuse of process and intentional infliction of emotional distress claims asserted against the State's Attorneys in Counts XI-XIV; and

(7) the defamation claims asserted against Dorris and the State's Attorneys in Count XV.

The defendants that remain in this suit shall file an answer to the claims in the third amended complaint that remain in this suit within fourteen days of the date of this Memorandum Opinion and Order.

**SO ORDERED**  **ENTERED:** 5/4/05

HON. RONALD A. GUZMAN
**United States District Judge**

19